UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Daniel Corbett,

      Plaintiff,

-against-

Anthony Annucci, *as acting Commissioner of the New York State Department of Corrections and Community Supervision*; Cheryl Morris, *in her individual capacity and as Director of Ministerial, Family and Volunteer Services*; Thomas Griffin, III; *in his individual capacity and as Superintendent of Green Haven Correctional Facility*; D.O.C.C.S.
      Defendants.

No. 16-cv-4492 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

  Plaintiff Daniel Corbett ("Plaintiff"), who is currently incarcerated at Green Haven Correctional Facility, commenced this *pro se* action under 42 U.S.C. § 1983 on June 14, 2016. (ECF No. 2.) Plaintiff alleges that various employees of the New York State Department of Corrections and Community Supervision ("DOCCS") violated his rights under the First Amendment, Fourteenth Amendment, and New York State law. (First Am. Compl. ("FAC"), ECF No. 19.) Currently before the Court is Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 27.) For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/13/18

## BACKGROUND

I.  **Factual Allegations**

The following facts are derived from the Complaint and the documents appended thereto, and are assumed to be true for the purposes of this motion.

Plaintiff, a Shi'ite Muslim incarcerated at Green Haven Correctional Facility, filed a grievance with the Inmate Grievance Resolution Committee ("IGRC") on October 29, 2015. (FAC at 3–4.) In his grievance, Plaintiff claimed he was being denied "Halal" meals that conform to the strict dietary requirements of his religion. (*Id.*) Plaintiff further claimed that, as a result, he was "unjustly compelled" to violate his religious beliefs and eat prohibited food. (*Id.*) When the IGRC failed to give a timely response to his grievance, Plaintiff "informed the grievance office in writing that [he] was exercising his option of passing the grievance" to the facility's Superintendent, Defendant Thomas Griffin, III ("Defendant Griffin"). (*Id.* at 4.) When Plaintiff once again did not receive a timely response, he requested that his grievance be "passed forward" to the Central Office Review Committee ("CORC"). (*Id.*)

Plaintiff filed a second grievance on December 08, 2015, reiterating his concern that he was being denied Halal food. (*Id.*) After receiving no response, Plaintiff requested in writing that his grievance be reviewed by the Superintendent, Defendant Griffin, on February 1, 2016. (*Id.*) When Defendant Griffin did not address his grievance, Plaintiff again requested that his grievance be reviewed by CORC. (*Id.*) Finally, on June 14, 2016, Plaintiff received a letter from Defendant Griffin, denying his grievance and noting that "[m]eals are prepared in accordance with [the] statewide menu." (*Id.*)

Plaintiff filed the instant action against Defendants on June 14, 2016. On January 24, 2017, Plaintiff filed a First Amended Complaint ("FAC"), seeking declaratory and injunctive

2

relief, compensatory damages in the amount of $10,000, and costs, interests, and reasonable attorney's fees for violations of his rights under the First and Fourteenth Amendments of the United States Constitution and New York State law. (*Id.* at 5.) Defendants filed the instant Motion to Dismiss the FAC on June 14, 2017. (ECF No. 27.)

## DISCUSSION

### I. Legal Standards

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at *679*. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

As to a motion brought under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).[1]

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "[T]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). Though a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

Finally, "where, as here, a plaintiff proceeds *pro se*, the court must 'construe [] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s].' " *Askew v. Lindsey*, No. 15-CV-7496 (KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (alterations in original) (citing *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). Yet, "'the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from

---

[1] The only jurisdictional issue presently before the court is the applicability of New York Correction Law § 24. Rule 12(b)(1) is not the proper vehicle for any other argument raised by Defendants. Indeed, failure to exhaust and qualified immunity are both affirmative defenses—rather than complete jurisdictional bars—that are properly raised under Rule 12(b)(6). *See McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004) ("We conclude that a qualified immunity defense can be presented in a Rule 12(b)(6) motion."); Woodford *v. Ngo*, 548 U.S. 81, 101 (2006) (recognizing that "the PLRA exhaustion requirement is not jurisdictional.")

4

compliance with relevant rules of procedural and substantive law.'" *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

**II. Analysis**

Construed liberally, Plaintiff's Complaint asserts claims for violations of the Free Exercise Clause First Amendment, the Equal Protection Clause of the Fourteenth Amendment, Article I, section 3 of the New York State Constitution, and § 610 of the New York Correction Law. Defendants contend that Plaintiff's claims should be dismissed because (1) Plaintiff has failed to plausibly allege any violation of his constitutional rights; (2) Plaintiff failed to exhaust his administrative remedies; (3) the FAC contains no factual allegations that any Defendant was personally involved in the alleged constitutional violations; (4) even if Defendants were involved, they are entitled to qualified immunity; and (5) Plaintiff's state law claims are barred by § 24 of the New York Correction Law. The Court now considers each of Defendant's arguments in turn.

**A. Plaintiff's Allegations**

The Court first addresses Defendant's contention that Plaintiff has failed to plausibly allege claims under the First and Fourteenth Amendments. For the reasons that follow, this Court finds that Plaintiff has adequately plead a First Amendment violation, but has not plausibly alleged a violation of the Equal Protection Clause of the Fourteenth Amendment.

*1. First Amendment claim*

"The Free Exercise Clause of the First Amendment is an 'unflinching pledge to allow our citizenry to explore . . . religious beliefs in accordance with the dictates of their conscience.'" *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)). "Prisoners have long been understood to retain some measure of the

constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). However, the Second Circuit has acknowledged that, "although prisoners do not abandon their constitutional rights at the prison door, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Saluhuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotation marks and citations omitted). Accordingly, the First Amendment protection afforded to inmates must be balanced with "the interests of prison official charged with complex duties arising from administration of the penal system." *Ford*, 352 F.3d at 588.

To establish a Free Exercise claim, an inmate plaintiff must typically plead that a sincerely held religious belief was substantially burdened by conduct that was not reasonably related to a legitimate penological interest. *Turner v. Sidorowicz*, No. 12-CV-7048 (NSR), 2016 WL 3938344, at *5 (S.D.N.Y. July 18, 2016); *Holland v. Goord*, 758 F.3d 215, 220–23 (2d Cir. 2014). The Second Circuit, however, has not decided whether the substantial burden standard remains viable following the Supreme Court's suggestion in *Employment Division v. Smith*, 494 U.S. 872, 887 (1990), that such a test "embroils courts in the unacceptable business of evaluating the relative merits of differing religious claims." *Holland*, 758 F.3d at 220 (internal quotation marks omitted). However, this Court need not address the issue here: even assuming the continuing viability of the substantial burden test, Plaintiff has plausibly alleged that his First Amendment rights were violated. As the Second Circuit has recognized, "courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *Id.* (internal quotations marks omitted). Indeed, "[t]his principle was established in our [C]ircuit at least as early as 1975." *McEachin v.*

6

*McGuinnis*, 357 F.3d 197, 203 (2d Cir. 2004) (citing *Ford* , 352 F.3d at 597). Plaintiff's present allegations fall squarely within this defined right. In his October grievance,[2] Plaintiff clearly states that he is "being unjustly compelled to violate his religion due to the religiously unlawful food that [he] [is] forced to eat." (Compl. at 11.) As such, Plaintiff has asserted a plausible claim for violations of his First Amendment right to free exercise of religion.

### 2. Fourteenth Amendment claim

The Court now considers whether Plaintiff has stated a claim under the Equal Protection Clause of the Fourteenth Amendment. The Fourteenth Amendment to the United States Constitution declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000) (internal quotations marks omitted) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).

There are several ways a plaintiff may plead an equal protection violation. *Id.* First and foremost, "[a] plaintiff could point to a law or policy that expressly classifies persons on [an improper basis]." *Id.* Alternatively, a plaintiff could identify a facially neutral law or policy that "has been applied in an intentionally discriminatory manner" or that "has an adverse effect and . . . was motivated by discriminatory animus." *Id.*

---

[2] While a court may not typically look beyond the four corners of the complaint in considering a motion to dismiss, "[a] complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). As Plaintiff attached his grievances to the Complaint, this Court may properly consider their contents at this juncture.

Here, Plaintiff fails to plead adequate facts to make any such showing. Plaintiff has not alleged the existence of a statute or policy that expressly classifies inmates based on their religious beliefs, nor does Plaintiff offer any allegations regarding intentional discrimination or disparate effect or treatment. In fact, the only comparator Plaintiff provides is a passing reference to "Jewish [inmates] and other DOCCS-recognized religious groups." (Compl. at 5.) However, Plaintiff fails to describe how the treatment of those groups differs from the treatment provided to Plaintiff. Without such allegations, Plaintiff fails to state a claim for an equal protection violation. Accordingly, Plaintiff's equal protection claim is dismissed without prejudice.

**B. Exhaustion**

Defendants additionally contend that Plaintiff's Fourteenth Amendment claim should be dismissed for failure to exhaust administrative remedies. This Court disagrees and finds that Plaintiff has adequately exhausted all available administrative remedies for his claims.[3]

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies 'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Kearney v.*

---

[3] Although Plaintiff's equal protection claim was dismissed due to inadequate pleadings, the Court nevertheless considers Defendant's exhaustion arguments because the dismissal was without prejudice. Given that his claim would not be barred on exhaustion grounds, Plaintiff is granted leave to replead the alleged equal protection violation. *See Barnes v. United States*, 204 F. App'x 918, 919 (2d Cir.2006) (summ. order) (recognizing that a *pro se* complaint "should not be dismissed without granting leave to replead at least once when [a liberal] reading gives any indication that a valid claim might be stated." (internal quotation marks omitted)).

8

*Gebo*, No. 17-218-PR, 2017 5256820, at *1 (2d Cir. Nov. 13, 2017) (summ. order) (quoting *Porter v. Nussle*, 534 U.S. 516, 532, (2002)).

Exhausting all remedies "'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Washington v. Chaboty*, No. 09-CV-9199 (PGG), 2015 WL 1439348, at *6 (S.D.N.Y. Mar. 30, 2015) (alteration in original) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009)). "[B]ecause 'it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion[,]" courts must "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures.'" *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

A person detained or incarcerated at a DOCCS facility must exhaust all steps of the Inmate Grievance Resolution ("IGR") Program ("IGRP"). *See Robinson v. Henschel*, No. 10-CV-6212, 2014 WL 1257287, at *10 (S.D.N.Y. Mar. 26, 2014). The IGRP provides a three-tiered process for adjudicating inmate complaints: (1) the prisoner files a grievance with the IGR committee ("IGRC"), (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the Central Office Review Committee ("CORC"). *See Espinal*, 558 F.3d at 125; *see also* 7 N.Y. Comp. Codes R. & Regs. § 701.5.

In the present case, Defendants argue that Plaintiff failed to exhaust the administrative remedies for his Fourteenth Amendment equal protection claim. Specifically, Defendants contend that although Plaintiff now asserts he is being treated differently than similarly-situated Jewish inmates based on his Islamic faith, neither of his previous grievances raised that issue.[4]

---

[4] *See supra* note 2.

Accordingly, Defendants maintain that "[w]hile Plaintiff's grievances may have put prison officials on notice of his claim that denying him a Halal diet may violate his religious rights, the grievances did not provide notice of Plaintiff's complaint that he was being unlawfully discriminated against as compared to Jewish inmates or other DOCCS-recognized religious groups." (Defs.' Mem. of Law. in Supp. Mot. to Dismiss ("Defs.' Mot.") at 19, ECF No. 28.)

This Court is unpersuaded by Defendant's argument and finds that Plaintiff has sufficiently exhausted his claims. "The PLRA's exhaustion requirement is designed to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (internal quotation marks and citations omitted). As such, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* A grievant, therefore, "need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Id.*; *see also Espinal*, 558 F.3d at 127–28 (finding that the Plaintiff did not need to assert the existence of a conspiracy to exhaust his conspiracy claim; it was "sufficient that his grievance adequately described the alleged misconduct.")

Here, Plaintiff sufficiently alerted the correctional facility that he was being denied a Halal diet. Plaintiff was not required to articulate any particular legal theory under which he may seek relief in federal court. Rather, Plaintiff put Defendants on notice of a potential wrongdoing—the inaccessibility of Halal food in their facility—and provided Defendants sufficient opportunity to investigate, evaluate, and decide whether to address his complaint. Plaintiff has, therefore, exhausted all administrative remedies. *See Johnson*, 380 F.3d at 697 ("In order to exhaust . . . inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures.").

### C. Personal Involvement

Defendants next argue that Plaintiff's First and Fourteenth Amendment claims should be dismissed because Plaintiff fails to adequately allege the personal involvement of any defendant in the deprivation of his constitutional rights. Defendants' argument, however, oversimplifies the issues.

As a preliminary matter, Defendants conflate the distinct nature of individual- and official-capacity suits. Suits against state officials in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks omitted). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* With these distinctions in mind, the Court now considers the sufficiency of Plaintiff's claims against the Defendants in their respective capacities.

#### 1. *Official-capacity claims*

Plaintiff initiated this suit against all three Defendants in their official capacities. Generally, "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." *Hafer*, 502 U.S. at 25 (internal quotation marks omitted); *see also Brown v. City of Oneonta, New York*, 235 F.3d 769, 70 n.2 (2d Cir. 2000). Here, while Plaintiff alleges that he is personally being denied access to Halal meals, he fails to identify a broader policy or custom that caused, or even played a role, in that deprivation. Without any such allegations, Plaintiff fails to adequately state a claim against Defendants in their official capacities. Accordingly, Plaintiff's First Amendment claims against Defendant's Annucci, Defendant Morris, and Defendant Griffin in their official capacities are dismissed.

*2. Individual capacity claims*

Plaintiff additionally asserts claims against Defendants Morris and Griffin in their individual capacities. While Defendants Morris and Griffin enjoy a supervisory role at Green Haven Correctional Facility, "a defendant in a §1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Rather, "a plaintiff must establish a given defendant's *personal involvement* in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir.) (emphasis added), *cert. denied sub nom. Brooks v. Pataki*, 137 S. Ct. 380 (2016). As the Second Circuit has explained, the personal involvement of a supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[5]

---

[5] Courts in this Circuit are "divided as to whether the five categories announced in *Colon* may still be used as the bases for liability under § 1983" following the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S.Ct 1937 (2009), which "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations." *Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517 at *6 (S.D.N.Y. Sept. 07, 2017) (internal quotation marks and citations omitted) (collecting cases); *see also Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) ("*Iqbal* has of course, engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set for in *Colon v. Coughlin*." (internal citation omitted)). "Some courts have simply concluded that, in the absence of Second Circuit precedent suggesting otherwise, they will continue to apply the *Colon* factors." *Allah*, 2017 WL 3972517 at *6. Given the Second Circuit's continued reference to all five *Colon* factors in recent decisions, *see, e.g., Shawn v. Prindle*, 661 F. App'x 16 (2d Cir. 2016) (summ. order), this Court finds such an approach prudent. Accordingly, this Court agrees that "all five

With regard to Defendant Morris, Plaintiff fails to explain how she was involved in the alleged constitutional deprivations. Indeed, the FAC is entirely devoid of any mention of Defendant Morris beyond her name in the case caption and list of defendants. With no factual allegations tying her to the constitutional violations at issue in this case, Defendant Morris cannot be held personally liable. Accordingly, all claims against Defendant Morris in her individual capacity are dismissed without prejudice.[6]

Plaintiff does, however, plead sufficient facts to establish Defendant Griffin's personal involvement with the alleged constitutional violations. Defendants contend that Superintendent Griffin's failure to respond to Plaintiff's October grievance and denial of the September grievance does not establish his personal involvement.[7] This Court disagrees.

"Courts in this Circuit are divided . . . regarding whether a supervisor who reviews and ultimately denies a grievance can be considered personally involved in the unconstitutional act underlying the grievance." *Garcia v. Watts*, No. 08-CV-7778 (JSR), 2009 WL 2777085, at *15 (S.D.N.Y. Sept. 1, 2009) (collecting cases). Some courts have attempted to reconcile this divide by finding personal involvement where the denied grievance alleges "'an ongoing constitutional violation that the supervisory official who reviews the grievance can remedy directly.'" *Id.*

---

categories under *Colon* are still valid unless and until the Second Circuit holds otherwise . . . ." *Allah*, 2017 WL 3972517 at * 6.

[6] Because Plaintiff is proceeding *pro se*, this Court grants Plaintiff leave to replead. If Plaintiff chooses to amend his Complaint, the Court cautions Plaintiff to include specific factual allegations against each named Defendant.

[7] Defendants claim that Defendant Griffin did, in fact, respond to the October grievance and that a different acting superintendent of Green Haven denied his September grievance. However, at this early stage of the litigation, the Court must take all material factual allegations contained in the Complaint as true. *See Iqbal*, 556 U.S. at 678. Such arguments, therefore, are better suited for a summary judgment motion.

13

(quoting *Vega v. Artus*, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009)); *see also Morgan v. Ward*, No. 14-CV-7921 (GHW), 2016 WL 427913, at *8 (S.D.N.Y. Feb. 2, 2016). Indeed, such an approach falls squarely within the second category of personal involvement outlined in *Colon*, which recognizes that a defendant is sufficiently personally involved where, after being informed of the violation through a report or appeal, she fails to remedy the wrong. *See* 58 F.3d at 873. Thus, this Court adopts the same standard and finds that Defendant Griffin's denial of Plaintiff's grievance adequately establishes his personal involvement in the constitutional violations alleged in this action.

### D. Immunity

#### 1. *Qualified immunity*

Having found that the Complaint sufficiently alleges his personal involvement in the deprivation of Plaintiff's constitutional rights, the Court must now consider whether Defendant Griffin is nonetheless immune from liability. "The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011)). Thus, "qualified immunity shields . . . officials from suit 'unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct.'" *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "A right is clearly established when its contours are sufficiently clear that at the time of the challenged conduct, every reasonable official would have understood that what we was doing violates that right." *Crawford v. Cuomo*, No. 16-CV-3466, 2018 WL 542578, at *1 (2d Cir. Jan 25, 2018) (internal quotation marks and citations omitted).

Here, there is no doubt that "[p]risoners have a right to receive diets consistent with their

14

religious scruples." *Benjamin v. Coughlin*, 905 F.2d 571, 579 (2d Cir. 1990) (internal quotation marks omitted). Defendants contend, however, that Superintendent Griffin is nevertheless entitled to qualified immunity because a reasonable official would not have necessarily understood that denying Plaintiff's grievance violated that right. (Def's Mot. at 14). Although Defendant Griffin's actions suffice to personally involve him in the alleged constitutional violation under *Colon*, as this Court has recognized, the continuing vitality of *Colon* has been brought into question. Because courts in this district are divided regarding whether a supervisor who denies a grievance is personally involved in the underlying constitutional violation, Defendant Griffin could reasonably have been unaware that his actions were unlawful. Therefore, to the extent that Defendant Griffin's only personal involvement with Plaintiff's First Amendment deprivations is his denial of Plaintiff's grievance, he is entitled to qualified immunity. However, to the extent that Plaintiff can, in good faith, allege more facts that personally involve Defendant Griffin in the purported constitutional violations, Plaintiff is granted leave to re-plead his claim.

The Court additionally notes that Defendant Griffin is only entitled to qualified immunity in his individual capacity. Qualified immunity is inapplicable to Plaintiff's claims brought against Defendant Griffin, or any other Defendants, in their official capacity. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("[S]ince the governmental entity itself possesses no personal privilege of absolute or qualified immunity, those privileges are available to governmental officials only with respect to damage claims asserted against them in their individual capacities. They are *not* available to the extent that the officials are sued in their official capacities." (emphasis added)).

   2. *Eleventh Amendment immunity*

15

With regard to Plaintiff's claims against Defendants Griffin, Morris, and Annucci in their official capacity, "the Second Circuit has held that '[t]o the extent that a state official is sued for damages in [her] official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.'" *Davis v. Westchester Cty. Family Court*, No, 16-CV-9487 (KMK), 2017 WL 4311039, at *6 (S.D.N.Y. Sept. 26, 2017) (quoting *Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). The Eleventh Amendment generally "forbids suits against states for monetary damages." *Kirkendall v. Univ. of Connecticut Health Ctr.*, 205 F.3d 1323 (2d Cir. 2000). Thus, Plaintiff's claims for monetary damages against Defendants in their official capacities are dismissed *with* prejudice.

The Eleventh Amendment, however, does not bar suits against state officials in their official capacities for prospective injunctive or declaratory relief. *See Tsirelman v. Daines*, 794 F.3d 310, 313–314 (2d Cir. 2015); *W. Mohegan Tribe & Nation v. Orange Cty.*, 395 F.3d 18, 21 (2d Cir. 2004). To determine if a suit is barred under the Eleventh Amendment, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Virginia Office of Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (internal quotation marks omitted).

Here, Plaintiff is seeking access to a religiously-compliant diet during the pendency of his incarceration. The alleged constitutional violation is therefore ongoing and Plaintiff's requested relief can appropriately be characterized as prospective. Accordingly, the Defendants are not entitled to immunity from Plaintiff's claims for prospective injunctive and declaratory relief.[8]

---

[8] The Court notes that the claims against all three Defendants in their official capacities may be duplicative of one another. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against [the government] entity. It is *not* a suit against the official personally, for the real party in interest is the entity." (internal citations omitted)); *see also Payson v. Bd. of Educ. of Mount Pleasant Cottage Sch.*,

### E. State Law Claims

Finally, Defendants argue that any of Plaintiff's claims arising under New York state law are barred by New York Correction Law § 24. Section 24 provides that "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . *in his or her personal capacity, for damages* arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee." N.Y. Correct. Law § 24 (emphasis added). The Second Circuit has held that defendants "are entitled to invoke the benefits of § 24" in federal court. *Baker v. Coughlin*, 77 F.3d 12, 16 (2d Cir. 1996).

By its own clear language, however, § 24 applies only to suits "*for damages*" against state officials. Because this Court has already dismissed all claims for monetary damages against all Defendants, the Court need not further address the preclusive effects of New York Correction Law § 24. *See Marria v. Broaddus*, 200 F. Supp. 2d 280, 301–02 (S.D.N.Y. 2002) (finding New York Correction Law § 24 inapplicable to claims under Article 1 of the New York State Constitution and Section 610 of the New York Correction Law where the plaintiff did not seek monetary damages under those provisions). Any state law claims for relief other than monetary damages, thus, remain in this action.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's Fourteenth Amendment equal protection claim is dismissed in its

---

*USFD*, no. 14-CV-9696 (JCM), 2017 WL 4221455, at *22 (S.D.N.Y. Sept. 20, 2017) (dismissing claims against individual defendants in their official capacities as agents of the Board of Education as duplicative of the claims asserted directly against the Board of Education.). However, the Court reserves judgment on that issue because it was neither raised nor briefed by Defendants.

entirety *without* prejudice. Plaintiff's First Amendment claims against all Defendants in their official capacities are similarly dismissed *without* prejudice, as are his First Amendment claims against Defendant Morris and Defendant Griffin in their individual capacities. Finally, Plaintiff's claims for monetary damages against all Defendants in their official capacities are dismissed *with* prejudice.

Plaintiff shall have until March 15, 2018 to amend his complaint in accordance with this Court's decision. If Plaintiff elects to file a second amended complaint, Defendant shall have until 30 days from the date of Plaintiff's filing to move or file responsive pleadings.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 27.

Dated: February 13, 2018
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge